FILED
10/06/2025
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
July 16, 2025 Session[1]

IN RE STEELE M.[2]

**Appeal from the Chancery Court for Hamblen County**
**No. 23-CV-298      Douglas T. Jenkins, Chancellor**

_____

**No. E2024-01454-COA-R3-PT**

_____

Appellee filed a petition in juvenile court seeking to terminate a father's parental rights. After a bench trial, the trial court granted the petition and entered an order terminating the father's parental rights based on the grounds of (1) abandonment by failure to support, (2) abandonment by failure to visit, (3) failure to manifest an ability and willingness to assume custody and financial responsibility, and (4) failure by a putative father to timely file a petition to establish paternity. The trial court also determined termination of the father's parental rights was in the child's best interest. We affirm the grounds for termination. However, we conclude that the trial court failed to make sufficient findings of fact regarding its best interest analysis. Accordingly, we vacate the trial court's decision that termination of the father's parental rights was in the best interest of the child and remand for further proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed
in Part, Vacated in Part; Case Remanded**

KRISTI M. DAVIS, J., delivered the opinion of the Court, in which ANDY D. BENNETT and JOHN W. MCCLARTY, JJ., joined.

Ethel P. Rhodes, Morristown, Tennessee, for the appellant, Cory J.[3]

---

[1] On July 8, 2025, the appellant, through counsel, filed a motion to waive oral argument and requested that this matter be considered on the briefs filed by the parties. Counsel for the appellee advised that she still wished to attend and present her case at oral argument as previously scheduled. An order was entered by this Court on July 9, 2025, granting the appellant's request to submit his brief without oral argument. This Court heard argument from counsel for the appellee during oral arguments on July 16, 2025.

[2] This Court has a policy of abbreviating the last names of children and other parties in cases involving termination of parental rights in order to protect their privacy and identities.

[3] Various filings in the record spell Father's name as "Corey"; however, the documentary evidence in the record makes clear that Father's name is spelled "Cory."

Crystal Jessee, Greeneville, Tennessee, for the appellee, Wayna J.

# OPINION

## BACKGROUND

Steele M. (the "Child"), born May 2022, is the minor child of the appellant, Cory J. ("Father").[4]  The Child tested positive for amphetamine, methamphetamine, and buprenorphine at birth.  Before leaving the hospital after his birth, the Child was placed in the protective custody of the Tennessee Department of Children's Services ("DCS") by order of the Hamblen County Juvenile Court (the "juvenile court").  The appellee, Wayna J. ("Petitioner"), is Father's stepmother and has had legal and physical custody of the Child since September 2022.  On July 19, 2023, Petitioner filed a petition to terminate Father's parental rights and adopt the Child (the "termination petition").  The termination petition alleged that Father abandoned the Child by failure to visit, abandoned the Child by failure to support, failed to timely legitimate and seek custody of the Child, failed to manifest an ability or willingness to assume custody of the Child, and that it is in the Child's best interest to terminate Father's parental rights.

Petitioner and the child's paternal grandfather, Michael J. ("Grandfather"), were married when the petition was filed.[5]  The original protective custody order entered by the juvenile court on May 18, 2022, granted sole legal and physical custody of the Child to Grandfather.  However, a continuance order entered by the juvenile court on June 29, 2022, granted legal and physical custody of the Child to Petitioner and Grandfather jointly.  A subsequent order entered by the juvenile court on September 7, 2022, granted sole custody of the Child to Petitioner and granted Grandfather unsupervised visitation with the Child.  Despite this, Grandfather was never made a party to the termination petition.

The trial court heard the termination petition in July 2024.  Petitioner testified that Grandfather has dementia and that DCS granted her sole custody of the Child "because of his medical issues."  She also testified that from the date the Child was born in May 2022 until the termination petition was filed on July 19, 2023, Father never paid child support or visited the Child, never made any attempt to legitimate the Child, and never made any attempt to assume financial responsibility or physical custody of the Child.  Moreover, she testified that the Child is closely bonded with the other children in her home,[6] calls her

---

[4] The parental rights of the Child's mother were terminated by default and are not at issue in this appeal.

[5] As discussed further below, Petitioner has since filed a complaint for divorce.  The record does not reflect whether that divorce has been finalized.

[6] Petitioner testified that three other children live in her home, including one of the Child's older siblings who is not at issue in this appeal.

"Mommy," and "goes everywhere" with her. Father testified that he saw the Child once and "remember[ed] holding him and putting him in the car seat and buckling him in." Father could not remember when he last saw the Child but testified that it was while he was using drugs and that he had stopped using drugs thirteen months before the trial on the termination petition. Father further testified that he had been working throughout portions of the custodial period; however, he was unable to provide approximate dates for his employment. Father testified that he took the steps necessary to have child support for the Child withheld from his paychecks after the termination petition was filed, although he was not paying support before the termination petition was filed. Moreover, he testified that he had missed multiple child support payments after the petition was filed because he "switched jobs" and "never thought to go back and catch them up." Father conceded that he did not attend any of the juvenile court hearings that resulted in the Child being found to be dependent and neglected and being placed in Petitioner's custody. Father also conceded that the Petitioner is "the only person in [the] child's life that showed up consistently[.]"

The trial court entered a final judgment on August 23, 2024, granting the termination petition and finding, in relevant part:

> The Court finds that all necessary parties who are entitled to notice of the proceedings have been served or are properly before the Court, and the Petitioner clearly testified that her husband had notice, and she is proceeding as a single party, as he is incompetent and not capable of attending. This testimony was unrefuted, and based upon T.C.A. 36-1-115, the Petitioner is properly before the Court, and a party the Court finds as suitable and able to adopt. Additionally, her husband knew of the proceeding, as he accompanied the father to several of the hearings and did not come to any court hearings. [*sic*] After testimony of the Petitioner, the Court find[s] that [g]rounds do exist to terminate the parental right of the Respondent, Father, by clear and convincing evidence . . . . The Court also finds, based upon the Petitioner's testimony, that her husband is incompetent, had notice of the proceedings, and failed to attend, and she is a proper person to go forward as a single parent adoption.

The trial court found by clear and convincing evidence that Father failed to pay child support despite the ability to do so and, thus, abandoned the Child by failure to support; failed to visit or even request to visit the Child "until well after the termination petition had been filed, and even then, he had not completed all requirements [previously set forth by the juvenile court in the earlier dependency and neglect proceedings]" and, thus, abandoned the Child by failure to visit; failed to legitimate or take any action to legitimate the Child; and failed to manifest an ability and willingness to assume custody. The judgment does not specifically address the best interest factors. The trial transcript contains the trial court's oral findings made at the conclusion of the trial as to each of the best interest factors;

however, the trial court did not incorporate the transcript by reference or otherwise make it a part of the judgment. Father appealed to this Court on September 20, 2024.

On December 5, 2024, while this appeal was pending, the trial court entered a *sua sponte* order stating that it was "concerned about" its prior finding that Grandfather "was not involved in the adoption because he was 'incompetent and not capable of attending.'" The trial court explained that Grandfather had appeared in court on November 1, 2024 "in the divorce case of *Wayna J*[.] *vs Michael J*[.]," and "[t]he inescapable fact is [Grandfather] seemed perfectly capable of: A. Attending and participating in a court case; [and] B. Attending to whatever business that he may need to attend to." This Court remanded the case back to the trial court to resolve this issue, and on January 17, 2025, the trial court entered an order

> vacat[ing] its findings that Michael J[.] "is incompetent and not capable of attending." Said findings are contrary to reality. The reality is that Michael J[.] is competent and is perfectly capable of attending court.

> All other findings/conclusions are undisturbed.

### ISSUES

Father raises two issues on appeal:

1. Whether the trial court erred in granting Grandmother's petition to terminate Father's parental rights and adopt the child without Grandfather joining in the petition?

2. Whether the trial court's best interest determination is supported by clear and convincing evidence?

Although Father does not challenge the trial court's finding of grounds for termination, we must "review the trial court's findings as to each ground for termination and as to whether termination is in the child's best interests, regardless of whether the parent challenges these findings on appeal." *In re Carrington H.*, 483 S.W.3d 507, 525–26 (Tenn. 2016).

### STANDARD OF REVIEW

"A person seeking to terminate parental rights must prove both the existence of one of the statutory grounds for termination and that termination is in the child's best interest." *In re Jacobe M.J.*, 434 S.W.3d 565, 568 (Tenn. Ct. App. 2013) (citing Tenn. Code Ann. § 36-1-113(c)). "Because of the profound consequences of a decision to terminate parental rights, a petitioner must prove both elements of termination by clear and convincing evidence." *In re Markus E.*, 671 S.W.3d 437, 456 (Tenn. 2023). This heightened burden

"minimizes the risk of unnecessary or erroneous governmental interference with fundamental parental rights" and "enables the fact-finder to form a firm belief or conviction regarding the truth of the facts[.]" *In re Carrington H.*, 483 S.W.3d at 522 (citing *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010)). "The clear-and-convincing-evidence standard ensures that the facts are established as highly probable, rather than as simply more probable than not." *Id.* (citing *In re Audrey S.*, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005)).

As our Supreme Court recently explained, we employ a two-step process in reviewing termination cases:

> To review trial court decisions, appellate courts use a [] two-step process, to accommodate both Rule 13(d) of the Tennessee Rules of Appellate Procedure and the statutory clear and convincing standard. First, appellate courts review each of the trial court's specific factual findings de novo under Rule 13(d), presuming each finding to be correct unless the evidence preponderates against it. *In re Taylor B.W.*, 397 S.W.3d 105, 112 (Tenn. 2013); *In re Justice A.F.*, [No. W2011-02520-COA-R3-PT,] 2012 WL 4340709, at *7 [(Tenn. Ct. App. Sept. 24, 2012)]. When a trial court's factual finding is based on its assessment of a witness's credibility, appellate courts afford great weight to that determination and will not reverse it absent clear evidence to the contrary. *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002); *In re Justice A.F.*, 2012 WL 4340709, at *7 (citing *In re M.L.D.*, 182 S.W.3d 890, 894 (Tenn. Ct. App. 2005)).

> Second, appellate courts determine whether the combination of all of the individual underlying facts, in the aggregate, constitutes clear and convincing evidence. *In re Taylor B.W.*, 397 S.W.3d at 112; *In re Audrey S.*, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005); *In re Justice A.F.*, 2012 WL 4340709, at *7. Whether the aggregate of the individual facts, either as found by the trial court or supported by a preponderance of the evidence, amounts to clear and convincing evidence is a question of law, subject to de novo review with no presumption of correctness. *See In re M.L.P.*, 281 S.W.3d 387, 393 (Tenn. 2009); *see also In re Samaria S.*, 347 S.W.3d 188, 200 (Tenn. Ct. App. 2011). As usual, the appellate court reviews all other conclusions of law de novo with no presumption of correctness. *In re Angela E.*, 303 S.W.3d [240,] 246 [(Tenn. 2010)].

*In re Markus E.*, 671 S.W.3d at 457.

ANALYSIS

*a.*

As a threshold issue, Father argues that "[w]ithout her husband joining in the petition [Petitioner] is not a proper party to request an adoption or a termination of parental rights." He also argues that without Grandfather joining in the petition, it was "impossible" for the trial court to properly evaluate the best interest of the Child. Father relies on Tennessee Code Annotated section 36-1-115, which provides:

(a) Any person over eighteen (18) years of age may petition the chancery or circuit court to adopt a person and may request that the adopted person's name be changed.

* * *

(c) If the petitioner has a spouse living, competent to join in the petition, such spouse shall join in the petition; provided, that if the spouse of the petitioner is a legal or biological parent of the child to be adopted, such spouse shall sign the petition as co-petitioner, and this shall be sufficient consent by the legal or biological parent for the petitioner's spouse to adopt the child of the legal or biological parent, and no surrender shall be necessary by such co-petitioning legal or biological parent. Such action by the legal or biological parent shall not otherwise affect the legal relationship between that parent and the child.

Tenn. Code Ann. § 36-1-115(a), (c) (effective May 5, 2023).[7] The polestar of statutory interpretation is the intent and purpose of the legislature in enacting the statute. *Nationwide Mut. Fire Ins. Co. v. Memphis Light, Gas & Water*, 578 S.W.3d 26, 30 (Tenn. Ct. App. 2018) (citing *Wade v. Jackson-Madison Cnty. Gen. Hosp. Dist.*, 469 S.W.3d 54, 58 (Tenn. Ct. App. 2015)). We begin by "reading the words of the statutes using their plain and ordinary meaning in the context in which the words appear." *Id*. "The statute must be construed in its entirety, and it should be assumed that the legislature used each word purposely and that those words convey some intent and have a meaning and a purpose." *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004) (quoting *Tenn. Growers, Inc. v. King*, 682 S.W.2d 203, 205 (Tenn. 1984)). When the language is clear and unambiguous, we look no further than the language of the statute itself to determine its meaning. *Id.*

---

[7] In termination cases, we apply the version of the statute in effect at the time the petition was filed. *See In re Braxton M.*, 531 S.W.3d 708, 732 (Tenn. Ct. App. 2017).

Petitioner initially argued before the trial court that Grandfather is incompetent and, therefore, not required to join in the petition. After the trial court expressed concern about its prior finding that Grandfather was "incompetent and not capable of attending[,]" Petitioner abandoned that argument and instead argued that section 36-1-115(c) is not applicable to this case because it only applies to stepparent adoptions. On appeal, she repeats this argument. We do not agree. Petitioner concedes that no Tennessee case law supports her interpretation of 36-1-115(c); however, she argues that her position is supported by *Baskette v. Streight*, 62 S.W. 142 (Tenn. 1901). In *Baskette*, a man adopted his grandchild without his wife joining in the adoption petition. *Id.* at 143. Following his death, the child's biological mother filed a petition seeking to regain custody of the child from the adoptive father's widow. *Id.* The trial court dismissed the petition, finding that the widow was the proper custodian of the child. *Id.* On appeal, the Tennessee Supreme Court analyzed the adoption statutes in effect at that time and observed "the Tennessee statute does not require a joint application by husband and wife for the adoption of the child, but provides generally that any person may adopt another upon giving sufficient reasons and obtaining the sanction of the court." *Id.* at 144. Petitioner urges that this case remains controlling law but ignores the fact that the adoption statutes in effect in 1901 do not control today. Tennessee's adoption statutes were rewritten in 1951, and the currently controlling statute makes clear that "[i]f the petitioner has a spouse living, competent to join in the petition, such spouse shall join in the petition[.]" *See* Tenn. Code Ann. § 36-1-115(c).[8] Although this language is the first part of a longer sentence that includes a semicolon connecting two clauses, adopting Petitioner's interpretation of the statute as applying only to stepparent adoptions would render the language before the semicolon meaningless. This interpretation violates our mandate to construe the statute "in its entirety" and "assume[] that the legislature used each word purposely and that those words convey some intent and have a meaning and a purpose." *See Eastman Chem.*, 151 S.W.3d at 507 (quoting *Tenn. Growers*, 682 S.W.2d at 205).

Petitioner argues alternatively on appeal that the statute is inapplicable because the judgment only terminates Father's parental rights and does not grant Petitioner's request to adopt the Child. In response, Father argues that "[t]he termination of parental rights is not an end in itself but a necessary prerequisite to the adoption," and, therefore, these proceedings cannot be bifurcated for the purposes of section 36-1-115(c). However, this is not an accurate statement of the law. Tennessee Code Annotated section 36-1-113(a) expressly allows trial courts "to terminate parental or guardianship rights to a child in a separate proceeding[] or as a part of the adoption proceeding[.]" *See In re Audrey S.*, 182

---

[8] We note that the adoption statutes in effect in 1901 are meaningfully different from the current adoption statutes in multiple ways. For instance, the 1901 statutes only required a "person wishing to adopt another as his child [to] give the reasons therefor," and if the court was "satisfied with the reasons given[,]" it could grant the adoption. *Baskette*, 62 S.W. at 144. Conversely, the current statutes require the petitioner to show by clear and convincing evidence "both the existence of one of the statutory grounds for termination and that termination is in the child's best interest." *In re Jacobe M.J.*, 434 S.W.3d at 568 (citing Tenn. Code Ann. § 36-1-113(c)).

S.W.3d at 879 (noting that "Tennessee law requires only that an adoption be contemplated at some point in the future"). Moreover, although section 36-1-115(c) requires that an adoption petitioner's spouse join the petition, no such requirement is set forth in section 36-1-113(b), which governs who has standing to file a termination petition. At the commencement of the bench trial, the following exchange occurred:

> [PETITIONER'S COUNSEL]: I filed a petition to terminate and adopt. I assume, as is customary for Your Honor, you will do the termination today, wait the 30 days, and then we'll address the adoption.
>
> THE COURT: If, in fact, it is granted, yes, that's the procedure I like to follow.

This is consistent with the judgment, which provides: "The Court will wait thirty days after entry to finalize the Adoption."

We agree with Petitioner that Grandfather was not a required party to a proceeding to terminate Father's parental rights. Therefore, we will not disturb the trial court's finding that Petitioner was a proper party to bring a termination petition. However, this conclusion does not extend to Petitioner's request to adopt the Child. Before the trial court rules on Petitioner's request to adopt the Child, it must ensure that the Petitioner is in compliance with section 36-1-115(c).

*b.*

We move now to whether the trial court correctly determined that Petitioner proved all alleged statutory grounds for termination by clear and convincing evidence. We address each of those grounds in turn.

### i. & ii. *Abandonment by failure to visit & failure to support*

Tennessee Code Annotated section 36-1-113(g) provides that abandonment, as defined in section 36-1-102, is a ground for terminating parental rights. Tenn. Code Ann. § 36-1-113(g)(1) (effective July 1, 2023). Section 36-1-102(1)(A)(i)(b) (effective July 1, 2023) provides:

> If the child is less than four (4) years of age, for a period of three (3) consecutive months immediately preceding the filing of a proceeding, pleading, petition, or amended or supplemental petition to terminate the parental rights of the parent or parents or the guardian or guardians of the child who is the subject of the petition for termination of parental rights or adoption, the parent or parents or the guardian or guardians either have failed

- 8 -

to visit or have failed to support or have failed to make reasonable payments toward the support of the child[.]

The Child was less than four years old when the termination petition in this case was filed on July 19, 2023; therefore, the relevant three-month period is April 18, 2023 through July 18, 2023.[9] *See In re Bentley E.*, 703 S.W.3d 298, 301 (Tenn. 2024) (The relevant period begins the enumerated number of months "before the date the petition was filed and ends the day before the petition was filed."). The trial court found

> by clear and convincing evidence that the Respondent, Father, has failed to pay child support despite the ability to do so, and has abandoned the child by his failure to support. The Father testified that he was capable and able to support the child, and did not do so during the relevant four month time frame in question. The Father provided the court no affirmative defenses, and none were plead, as to why he did not support the child. Additionally, the Court finds that since the fi[l]ing of the Petition for Adoption, the Father has been paying some support, but is not even current with those payments.
>
> The Court finds by clear and convincing evidence that the Respondent, Father, has abandoned the child, by failing to visit the child during the specific four month period plead herein. The Court finds that the Father knew what he had to do to be able to visit the child, and despite being aware of what he needed to accomplish in order to visit, the Father did nothing. The timeframe is clear, that the Father never even requested to visit the child, until well after the termination petition had been filed, and even then, he had not completed all requirements as set out in the Court Order from [the] Hamblen County Juvenile Court. Therefore, the ground of abandonment for failure to visit, has been met by clear and convincing evidence.

(Paragraph numbering omitted).

---

[9] Until June 30, 2023, the relevant period was four months, no matter the age of the child. *See* Tenn. Code Ann. § 36-1-102(1)(A) (effective May 5, 2023 to June 30, 2023). As of July 1, 2023, the statute was amended to provide that the relevant period is three months if the child is less than four years of age. The judgment does not set forth the relevant three-month period and instead states that Father failed to support the child "during the relevant four month time frame in question" and failed to visit the child "during the specific four month period plead herein." Notably, the period plead in the termination petition is January 30, 2023 through May 30, 2023, which is not the relevant period. We ultimately conclude, however, that given the specific facts of this case, this error regarding the correct calculation of the four-month period is not determinative. "Accordingly, despite the incorrect date as stated in the order, we go on to consider this ground in the interest of providing a speedy resolution for [the child]." *In re Navada N.*, 498 S.W.3d 579, 600 n.12 (Tenn. Ct. App. 2016). We also note that Father does not raise this miscalculation as an error on appeal.

We agree with the trial court's reasoning. As the trial court correctly explained, a parent's rights may be terminated for failure to visit when the parent can reinstate visitation but fails to do so. We have specifically held that "when a parent chooses not to cooperate with certain conditions, such as obtaining a drug and alcohol abuse assessment, that choice 'in refusing to cooperate [] constitute[s] a willful decision' to discontinue visitation." *In re Hayden L.*, No. E2018-00147-COA-R3-PT, 2018 WL 4190986, at *6 (Tenn. Ct. App. Aug. 31, 2018) (quoting *State Dept. of Children's Servs. v. J.A.H.*, No. E2005-00860-COA-R3-PT, 2005 WL 3543419, at *6 (Tenn. Ct. App. Dec. 28, 2005)).

Father testified that he had only seen the Child once since the Child was removed from his custody. He could not remember when he last saw the Child, only that it was while Father was still using drugs and that he had been sober for thirteen months at the time of trial in July 2024. He stated that he had not asked Petitioner to allow him to visit the Child because of the no-contact order entered by the juvenile court. The Adjudicatory/Dispositional Hearing Order entered by the juvenile court on September 7, 2022 prohibited Father from having contact with the Child pending further hearing and required him to complete the following steps: mental health assessment/counseling, alcohol and drug assessment/counseling, random drug screens/pill counts, parenting assessment, maintain contact with the case manager, comply with DCS and provider in-home services, obtain/maintain transportation plan, obtain/maintain legal source of income, and obtain/maintain safe and stable housing. When asked about whether he had taken any of the steps provided in the no-contact order, he testified: "Yes. But it went on so long, and when I actually called DCS to see about it, they said that they done closed the case, so I'd have to take it up with court." He was unable to recall when he reached out to DCS, stating that he is "not good with dates." However, he conceded that he had not appeared at any of the juvenile court hearings due to his difficulty with dates and because he was "in and out" of his grandmother's house, so he "never really got the mail."

Father also testified that he had not paid any child support prior to the filing of the termination petition because DCS had not obtained a child support order requiring any such payment. However, Tennessee law presumes that every parent who is eighteen years of age or older "ha[s] knowledge of a parent's legal obligation to support such parent's child or children." Tenn. Code Ann. § 36-1-102(1)(H). A list of child support payments made by Father was admitted as evidence at trial and reflects that Father began making child support payments on July 27, 2023, only after the termination petition was filed.

The evidence is clear and convincing that in the three months before the termination petition was filed, Father did not visit the Child and did not provide any support for the Child. Therefore, the trial court correctly concluded that Petitioner proved the grounds of abandonment by failure to visit and abandonment by failure to support by clear and convincing evidence.

### iii. Failure to Manifest an Ability and Willingness to Assume Custody

Tennessee Code Annotated section 36-1-113(g)(14) also provides a ground for termination of parental rights when

> [a] parent ... has failed to manifest, by act or omission, an ability and willingness to personally assume legal and physical custody or financial responsibility of the child, and placing the child in the person's legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child[.]

This ground requires clear and convincing proof of two elements. *In re Neveah M.*, 614 S.W.3d 659, 674 (Tenn. 2020). The petitioner must first prove that the parent has failed to manifest an ability and willingness to personally assume legal and physical custody or financial responsibility of the child. *Id*. The petitioner must then prove that placing the child in the parent's custody poses "a risk of substantial harm to the physical or psychological welfare of the child." *Id.* The statute requires "a parent . . . to manifest both an ability and willingness to personally assume legal and physical custody or financial responsibility for the child." *Id.* at 677. Therefore, if a party seeking termination of parental rights establishes that a parent or guardian "failed to manifest <u>either</u> ability or willingness, then the first prong of the statute is satisfied." *Id*. The analysis of a parent's failure to manifest an ability and willingness to assume custody or financial responsibility focuses on the parent's actions throughout the life of the Child. *Id*.

Regarding the second statutory prong,

> [t]he courts have not undertaken to define the circumstances that pose a risk of substantial harm to a child. These circumstances are not amenable to precise definition because of the variability of human conduct. However, the use of the modifier "substantial" indicates two things. First, it connotes a real hazard or danger that is not minor, trivial, or insignificant. Second, it indicates that the harm must be more than a theoretical possibility. While the harm need not be inevitable, it must be sufficiently probable to prompt a reasonable person to believe that the harm will occur more likely than not.

*In re Virgil W.*, No. E2018-00091-COA-R3-PT, 2018 WL 4931470, at *8 (Tenn. Ct. App. Oct. 11, 2018) (quoting *Ray v. Ray*, 83 S.W.3d 726, 732 (Tenn. Ct. App. 2001)).

As to this statutory ground, the trial court found

> that the Father has come a long way, but has not shown the ability to get himself in a position to assume legal and physical custody of the child, and if he was, the Court finds that it would be det[rimental] to the child, as the

- 11 -

child has only known the Petitioner as his main caregiver. The Father does not have his own home, and recently was displaced from the home he was residing in, with his grandmother, to live with his mother, upon his grandmother's death. The Court finds that the Father, though he has taken great strides, still has not consistently supported the child, by making the court ordered child support payments, as due. The Court finds that it would pose a risk of harm to the child's psychological well[-]being, to be uprooted from the only stable environment, he has ever known since about the eighth week of his life.

At trial, Father testified that he had completed a mental health assessment at Helen Ross McNabb but that he "quit going there because the medicine they gave [him] gave [him] restless legs real bad. And [he] didn't feel the need to." He testified that he was not on any medication at the time of trial. However, he had completed an eight-week intensive outpatient program at a different recovery center, and a certificate of graduation dated September 6, 2023 was admitted into evidence at trial. Evidence was also admitted showing that Father had three clean drug screens between September 5, 2023 and July 1, 2024 and that he completed a four-hour parenting course on October 24, 2023. Notably, however, these drug screens were not random, and Father had not completed a parenting assessment. Father testified that in the time he had been sober, he was employed, regularly attending church, volunteering, complying with the terms of his probation, and paying toward his court costs so he could reinstate his driver's license. At the time of trial, Father had not yet finished paying off his court costs and resided with his mother. Father's mother testified that Father had been living with her "[o]ff and on" for twelve to thirteen months and that she provided his transportation. She further testified that Father lived with her and her husband in a four-bedroom house.

Having reviewed the record, the evidence preponderates in favor of the trial court's factual findings regarding Father and section 36-1-113(g)(14). We agree that Father failed to manifest both an ability and willingness to parent. Although Father has improved his circumstances and made strides to achieve stability, he waited until the eleventh hour to do so. The Child was fourteen months old when the termination petition was filed and two years old by the time of trial. In the Child's entire life, Father has only seen him twice— first at the hospital when the Child was born drug-exposed and then in passing at a hotel when Father was still using drugs and subject to the juvenile court's no-contact order. Despite the Child having been in protective custody since the first days of his life, Father's efforts began in earnest only after Petitioner filed the termination petition. As to the second prong of section 36-1-113(g)(14), removing the Child from the only home he has ever known and placing him with a stranger would pose a risk of substantial harm to the Child's emotional well-being. Therefore, we find that this ground was proven by clear and convincing evidence.

### iv. Failure to legitimate

The trial court also found that Father

> failed to legitimate or attempt to take any action to legitimate the child, as set out in T.C.A[.] 36-1-113(g) . . .
>
> The Father has taken no action to legitimate the child. The child was taken into custody very early in life, and the Father never stepped up and asked the Court to take any action to secure him as the Father and properly legitimate him. The Court finds that the child is two years old and the Father has taken no action to secure his parentage, and to do so now, would be detrimental to the child.
>
> * * *
>
> Therefore, the Court finds that the ground of T.C.A. 36-1-113(g)(9) . . . exist[s] by clear and convincing evidence.

Section 36-1-113(g)(9) provides grounds for terminating the parental rights of putative fathers. It appears from the record that at the time the Child was born, the parents were unmarried, but it was unquestioned that Father was the Child's biological father. The record does not reflect whether Father ever signed a voluntary acknowledgment of paternity. However, Father's answer to the termination petition, filed August 15, 2023, avers that "[h]e submitted to a DCS D&A [*sic*] test in June and is now paying child support through his pay check." Testimony at trial confirms that Father submitted to a DNA test in July 2023 to determine whether he is the Child's biological father. The record does not contain the result of that DNA test. Moreover, "[a] man shall not be a legal parent of a child based solely on blood, genetic, or DNA testing determining that he is the biological parent of the child without either a court order or voluntary acknowledgement of paternity pursuant to § 24-7-113." Tenn. Code Ann. § 36-1-102(30)(B) (effective July 1, 2023). Given these facts, without a court order or voluntary acknowledgement of paternity in the record, we must conclude that Father was a putative father at the time the petition was filed. *See id.* § 36-1-102(30)(A), (45).[10]

---

[10] As this Court has previously addressed:

> Here, the trial court found several grounds for termination, some that are applicable to parents generally, *see* Tenn. Code Ann. § 36-1-113(g)(1), and one that is applicable only to putative fathers. *See* Tenn. Code Ann. § 36-1-113(g)(9)(A). The term parent is defined broadly in Tennessee Code Annotated section 36-1-102 as "any biological, legal, adoptive parent or parents or, for purposes of §§ 36-1-127 -- 36-1-141, stepparents[.]" Tenn. Code Ann. § 36-1-102(3[8]) [(effective July 1, 2023)]. . . . Here, there is no dispute that Father is the biological parent of the child, but that he has not been established as a legal parent. Thus, grounds applicable to both parents generally and

- 13 -

The relevant version of section 36-1-113(g)(9) provides:

(A) The parental rights of any person who, at the time of the filing of a petition to terminate the parental rights of such person, or if no such petition is filed, at the time of the filing of a petition to adopt a child, is the putative father of the child may also be terminated based upon any one (1) or more of the following additional grounds:

(i) The person has failed, without good cause or excuse, to make reasonable and consistent payments for the support of the child in accordance with the child support guidelines promulgated by the department pursuant to § 36-5-101;

(ii) The person has failed to seek reasonable visitation with the child, and if visitation has been granted, has failed to visit altogether, or has engaged in only token visitation, as defined in § 36-1-102;

(iii) The person has failed to manifest an ability and willingness to assume legal and physical custody of the child;

(iv) Placing custody of the child in the person's legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child; or

(v) The person has failed to file a petition to establish paternity of the child within thirty (30) days after notice of alleged paternity, or as required in § 36-2-318(j), or after making a claim of paternity pursuant to § 36-1-117(c)(2);

* * *

(C) For the purposes of this subdivision (g)(9), resuming or starting visitation or support after the filing of a petition seeking to terminate parental or guardianship rights or seeking the adoption of a child does not rectify a ground for termination pursuant to this subdivision (g)(9) and is not a defense to a ground for termination pursuant to this subdivision (g)(9)[.]

---

putative fathers specifically are appropriate in this case. We will therefore consider both types of grounds found by the trial court.

*In Re London B.*, No. M2019-00714-COA-R3-PT, 2020 WL 1867364, at *5 (Tenn. Ct. App. Apr. 14, 2020).

- 14 -

Tenn. Code Ann. § 36-1-113(g)(9) (effective July 1, 2023) (emphasis added). As to this ground, the termination petition alleged that Father "failed to take timely action to secure any additional custody rights to the child, as set out in Tennessee Code Annotated § 36-1-113(g) and be legitimated." The record on appeal does not contain any petition to establish paternity filed by Father at any point in the Child's life, despite Father holding himself out to be the Child's father from the time of his birth. Therefore, we agree with the trial court that the ground set forth in section 36-1-113(g)(9)(A)(v) was proven by clear and convincing evidence.

*c.*

In addition to proving at least one statutory ground for termination, Petitioner must prove by clear and convincing evidence that the Child's best interests are served by terminating Father's parental rights. Tenn. Code Ann. § 36-1-113(c). Indeed, "a finding of unfitness does not necessarily require that the parent's rights be terminated." *In re Marr*, 194 S.W.3d 490, 498 (Tenn. Ct. App. 2005) (citing *White v. Moody*, 171 S.W.3d 187, 193 (Tenn. Ct. App. 2004)). Our termination statutes recognize that "[n]ot all parental misconduct is irredeemable" and that "terminating an unfit parent's parental rights is not always in the child's best interests." *Id*. As such, the focus of the best interests analysis is not the parent but rather the child. *Id*.; *see also White*, 171 S.W.3d at 194 ("[A] child's best interests must be viewed from the child's, rather than the parent's, perspective.").

When determining whether termination is in a child's best interests, "the court <u>shall</u> consider all relevant and child-centered factors applicable to the particular case[,]" which "may include, but are not limited to" the factors set forth in Tennessee Code Annotated section 36-1-113(i)(1). (Emphasis added). Importantly, "[a]ll factors considered by the court to be applicable to a particular case must be identified and supported by specific findings of fact in the court's written order." Tenn. Code Ann. § 36-1-113(i)(3). Our ability to review the trial court's best interest determination in this case is hindered by a lack of factual findings in the judgment. As to its best interest determination, the judgment merely states:

> The Court also finds that the termination of the [Father's] parental rights is in the child's best interest. As stated above, the child came to live with the Petitioner, at an early age. Then, the Petitioner was given sole custody of the child, by Juvenile Court, based upon her husband's dementia, and erratic behavior. She has been the sole caregiver for the child. She is a fit and proper person to care for the child, and has done so in the past. The Court finds by clear and convincing evidence that it is in the child's best interest for the Father's rights to be terminated . . . .

This statement does not satisfy the "specific findings of fact" requirement of Tennessee Code Annotated section 36-1-113(i)(3). The trial transcript reflects that at the conclusion

- 15 -

of the trial, the trial court made an oral ruling that included factual findings regarding its best interest analysis. However, the judgment does not include any of those factual findings, nor does it incorporate them by reference. "It is well-settled that the trial court speaks through its orders, not through its statements contained in the transcripts." *In re Christian G.*, No. W2013-02269-COA-R3-JV, 2014 WL 3896003, at *1 (Tenn. Ct. App. Aug. 11, 2014) (citing *Alexander v. J.B. Partners*, 380 S.W.3d 772, 777 (Tenn. Ct. App. 2011)); *see also* Tenn. Code Ann. § 36-1-113(i)(3).

Because the trial court failed to make sufficient findings of fact and conclusions of law regarding the best interest analysis, we vacate that portion of the judgment terminating Father's parental rights. We remand the case for the trial court to make specific findings of fact as to the best interest factors in effect at the time the termination petition was filed.

## CONCLUSION

We affirm the trial court's determination that clear and convincing evidence existed to establish grounds for termination. Because the trial court failed to make sufficient findings of fact in concluding that termination of Father's parental rights was in the best interest of the Child, we vacate that portion of the judgment terminating Father's parental rights and remand for specific findings of fact as to the applicable best interest factors. Costs of this appeal are assessed equally against the appellant, Cory J., and the appellee, Wayna J., for which execution may issue if necessary.

_____
KRISTI M. DAVIS, JUDGE